IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ANDREA GRAZIOSI** | : | **CIVIL ACTION** |
| *Plaintiff* | : | |
| | : | |
| v. | : | **NO. 23-CV-4340** |
| | : | |
| **INSPIRITEC** | : | |
| *Defendant* | : | |

**M E M O R A N D U M**

NITZA I. QUIÑONES ALEJANDRO, J.  MARCH 18, 2024

Currently before the Court is Defendant Inspiritec's *motion to dismiss* the Complaint filed by Plaintiff Andrea Graziosi, which asserts employment discrimination and retaliation claims under the Americans with Disabilities Act ("ADA") and New Jersey Law Against Discrimination ("NJLAD"). The thrust of Graziosi's claims is that he was unlawfully terminated from his position as a customer service representative during his training period because Inspiritec believed his mental health conditions limited his ability to perform. For the reasons set forth, the motion to dismiss will be granted, *in part*, and denied, *in part*.

I.   **FACTUAL ALLEGATIONS**[1]

Graziosi was briefly employed by Inspiritec as a customer service representative working remotely from his residence in Camden, New Jersey, from November 28, 2022 through April 17, 2023, when he was terminated while "on training status." (Compl ¶¶ 1, 18-20.) Inspiritec is a "US Government Contractor working with and for a variety of state and federal agencies, providing contact centers and IT support services," with headquarters in Philadelphia, Pennsylvania. (*Id.* ¶ 12.) Graziosi, who has a history of Bipolar Disorder, Generalized Anxiety Disorder, and

---

[1] The following factual allegations are taken from Graziosi's Complaint (ECF No. 2).

Obsessive Compulsive Disorder, (*id.* ¶ 13), "has been in the labor force for thirty-eight years," including two decades in the hospitality industry. (*Id.* ¶¶ 22-23.) He was hired by Inspiritec on November 4, 2022 following interviews with Nancy Santana (who would eventually become his supervisor) and Chasity Mosby (who would eventually become his case manager) both of whom were allegedly impressed with Graziosi's "extensive customer service experience." (*Id.* ¶¶ 24-25.)

Three days prior to his start date, Graziosi received a call from Kathleen Cassidy, Inspiritec's Human Resources manager. (*Id.* ¶ 26.) Cassidy, who was allegedly aware that Graziosi "had disabilities" from his application, told Graziosi that he was not required to disclose the nature of those disabilities unless he required a reasonable accommodation. (*Id.* ¶¶ 27-28.) Graziosi nevertheless "voluntarily disclosed his disabilities" and told Cassidy that he "was qualified to perform the essential duties of this job and required no accommodations." (*Id.* ¶ 29.) He also willingly provided documentation of his conditions at Cassidy's request. (*Id.*) Cassidy let Graziosi know to contact her if he required any accommodations and stated that she would provide him with a form he could complete in the event he had limitations that required an accommodation. (*Id.* ¶ 33.)

Graziosi's employment with Inspiritec required him to complete training classes, which he alleges were "long-lasting because of the significant knowledge required." (*Id.* ¶ 42.) It is apparent from the Complaint that Graziosi experienced numerous technological difficulties during trainings, which he claims were not adequately addressed by tech support and which appear to have affected his performance evaluations. (*See id.* ¶¶ 39-41, 48-49.) In that regard, he received what he classifies as an "unfair review" from an "external trainer not employed by the Defendant"

2

following four training classes during which he was the only trainee limited to audio because he was unable to access the "video call." (*Id.* ¶¶ 1-2.)

Graziosi's difficulties with Inspiritec primarily began on February 21, 2023 after he complained to Santana and Mosby about the "unfair review," which Mosby allegedly "blamed him for" without allowing him to provide an explanation. (*Id.* ¶ 1.) Thereafter, Santana, Mosby and Allison Johnson, a "tech manager," allegedly created a "toxic and hostile work environment" to intimidate and pressure Graziosi to quit, culminating in his termination on April 17. (*Id.* ¶¶ 3-4.) By the end of February, Johnson would speak to him in a "rude and unprofessional" manner, for example, by cutting him off while he was talking, saying things like "'time out' like children are talked to," and belittling him by telling him he should have fixed certain issues on his own. (*Id.* ¶¶ 34-37.) Although Graziosi "felt intimidated and bullied" by Johnson, he never reported her conduct to his supervisor or case manager. (*Id.* ¶¶ 37-38.)

On March 15, 2023, Inspiritec introduced a new application for trainees to listen to calls, but Graziosi was unable to use it because the audio on his computer did not work. (*Id.* ¶ 39.) When he reported the issue to Johnson, she could not identify the problem. (*Id.*) Graziosi alleges that Santana began "harassing" him during this time "to have him quit under retaliatory pressure" by "creat[ing] false documentation of performance issues" and stating she needed to talk to him about those issues without intending to do so. (*Id.* ¶¶ 50-55.) In particular, Santana emailed Graziosi on March 23, stating "We need to create a plan to get your scores up before you will have to be separated from the contest." (*Id.* ¶ 50 (emphasis omitted).) She emailed him again on March 27, saying she urgently needed to talk to him and that, "Perhaps this contract is not the best fit for you." (*Id.* ¶ 53 (emphasis omitted).) Also on March 27, Graziosi contacted the head trainer out

3

of frustration to resolve the technological problem, after which he contends Johnson "called him and in minutes she fixed the issue." (*Id.* ¶¶ 40-41.)

On April 14, Graziosi's laptop computer was "wholly unresponsive." (*Id.* ¶ 58.) Both the trainer and head trainer directed Graziosi to call his supervisor or case manager rather than contacting tech support. (*Id.* ¶¶ 59-63.) Fearing he would be terminated, Graziosi sent an email from his personal email account to his supervisor, case manager, and the head trainer "to document these unusual circumstances." (*Id.* ¶¶ 65-67.) An hour later, a tech manager contacted Graziosi and fixed the technical issue "within minutes," such that he was able to proceed with training for the rest of the day. (*Id.* ¶ 68.)

Graziosi was terminated on April 17. He received an email from Sanatana that morning stating "I need you to take the attached form and send it to your doctor's office. Also, we need to talk about your current position as soon as possible." (*Id.* ¶ 69.) The attached form was the same one that Cassidy, the Human Resources manager, had discussed with Graziosi prior to his start date pertaining to limitations and accommodations. (*Id.* ¶ 70.) Approximately one hour later, Santana called Graziosi, terminated him "due to poor performance," and informed him that he "received that medical form because of limitations due to his disabilities she and Ms. Cosby needed to know."[2] (*Id.* ¶¶ 71-72.) Graziosi asked Santana whether "she had 'unmistakable evidence' to believe he had limitations for which she determined he was unable to perform the essential functions of [the] job due to his disabilities," when she determined he had any such limitations, and why, if she believed "he had 'limitations' to perform his duties he was never approached until now," but Santana did not provide a "pertinent" response to his questions. (*Id.* ¶¶ 74-76.) Rather,

---

[2]  At times, the Complaint refers to "Ms. Cosby." As best as the Court can discern, this is a typographical error and refers to Ms. Mosby.

4

she told Graziosi he "was not fired yet" despite having terminated him at the beginning of the call. (*Id.* ¶¶ 77-79.)

An hour later, case manager Mosby called Graziosi to confirm that he was fired for poor performance and that he must return the medical form; she also had no "pertinent response" to Graziosi's questions. (*Id.* ¶¶ 79-85.) She told Graziosi that he could apply for other jobs with Inspiritec but that he would first have to return the medical documentation, which would require information about his "limitations." (*Id.* ¶¶ 87-89.) Mosby also informed Graziosi of a department "solely" for employees with disabilities and made clear that this was the only department he would be permitted to apply to at Inspiritec "because that department would be better for someone like you." (*Id.* ¶¶ 90-94 (emphasis omitted).) Graziosi notes that a few days before he was terminated, another employee, who did not have disabilities, was concerned about her scores and was told by the head trainer to keep "working hard" because "every trainee is supported and assisted to the maximum extent." (*Id.* ¶¶ 45-46.) Graziosi alleges that, unlike him, this employee was not terminated and is still employed with Inspiritec. (*Id.* ¶ 47.) He asserts that his "termination was based on bias, stereotypes and belief that [he] had limitations due to his disabilities that made him unfit to perform, and for which he was fired," (*id.* ¶ 5), and that he was also terminated "for having a history of disabilities," (*id.* ¶ 101).

## II.   MOTION TO DISMISS AND RESPONSE

Inspiritec moved to dismiss the Complaint for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6).[3] First, Inspiritec argues that Graziosi has failed to plead a *prima*

---

[3] Inspiritec filed a motion to dismiss on January 3, 2024, (ECF No. 18), followed by an amended motion to dismiss on January 4, 2024, (ECF No. 19). The motions are essentially identical. Accordingly, the Court will disregard the first motion and cite to the second-filed motion. Similarly, since Graziosi filed a response to both motions, (ECF Nos. 23 & 24), the Court will disregard the first response and instead cite to the second-filed response.

*facie* case of disability discrimination and has, therefore, failed to state a claim. (Def.'s Am. Mot. (ECF No. 19-1) at 4-5.) Specifically, Inspiritec argued in the motion to dismiss that Graziosi (a) has failed to allege that he has a disability within the meaning of the ADA because he failed to allege how his conditions substantially limit a major life activity, and similarly failed to allege that he has a "record of a disability" or was "regarded as" disabled. (*Id.* at 5-7.); (b) has failed to state a retaliation claim because he did not engage in any protected activity. (*Id.* at 7-8.); and (c) that the NJLAD does not apply because Graziosi was employed with Inspiritec's office in Pennsylvania, not New Jersey. (*Id.* at 8-10.)

In response, Graziosi argues that he has alleged more than enough facts to put Inspiritec on notice of the claims against it, as is required at the pleading stage. (Pl.'s Resp. (ECF No. 24-1) at 8-9.) In that regard, Graziosi contends that he disclosed his disabilities, alleged that he was qualified for the job, and stated facts to support an inference that he was terminated "based on bias, stereotypes and belief that he was unfit to perform because of limitations due to his disabilities solely for having a record (history) of psychiatric disabilities, while no issues linked to his disabilities ever surfaced." (*Id.* at 11.) In other words, he alleges that he has adequately pled a basis for proceeding on a claim that he was discriminated against because he had a record of a disability and/or because he was "regarded as" disabled by his employer. (*Id.* at 11-14.) As to his retaliation claims, Graziosi responds that he was, in fact, "subjected to adverse actions" because he was subjected to harassment and, ultimately, was terminated. (*Id.* at 13-16.) Finally, Graziosi contends that New Jersey law, including the NJLAD, applies to his employment because he worked remotely full time from his residence in New Jersey during his employment with Inspiritec. (*Id.* at 16-19.) Inspiritec filed a reply, essentially rejecting Graziosi's arguments. (Def.'s Rep. (ECF No. 25).)

While the parties were briefing their arguments, this case was in a brief stay following a referral to the Court's Volunteer Attorney Panel for Plaintiffs in Employment Discrimination to attempt to obtain volunteer counsel for Graziosi at his request.  (*See* ECF Nos. 3, 10.)  However, the Court was unable to obtain volunteer counsel for Graziosi and removed his case from the panel and the related stay.  Thereafter, Graziosi expressed his commitment to continuing to represent himself in this matter.  (ECF No. 26, 27.)  Accordingly, Inspiritec's motion is ripe for consideration.

### III. STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6) "tests the sufficiency of the allegations contained in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  In deciding a motion to dismiss under Rule 12(b)(6), the court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555.)  "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted).  "[T]he plausibility paradigm . . . applies with equal force to analyzing the adequacy of claims of employment discrimination." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (quotations omitted).  To state an employment

discrimination claim, as with any other claim, a plaintiff must "put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Id.* at 213 (quotations omitted).

In resolving a Rule 12(b)(6) motion, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). To determine whether a complaint filed by a *pro* se litigant states a claim, a court must accept the facts alleged as true, draw all reasonable inferences in favor of the plaintiff, and "ask only whether that complaint, liberally construed contains facts sufficient to state a plausible . . . claim." *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (cleaned up); *see also Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (*pro se* filings are construed liberally).

## IV. DISCUSSION

### A. American with Disability Act (ADA) discrimination claim

To state a plausible discrimination claim under the ADA a plaintiff must allege: (1) that he is disabled within the meaning of the ADA; (2) that he is otherwise qualified to perform the essential functions of the job, with or without a reasonable accommodation; and (3) he suffered an adverse employment decision as a result of the discrimination. *Eshleman v. Patrick Indus., Inc.*, 961 F.3d 242, 245 (3d Cir. 2020) (citation omitted). A plaintiff is disabled for purposes of the ADA if he (1) has a "physical or mental impairment that substantially limits one or more" of his "major life activities"; (2) has "a record of such an impairment"; or (3) is "regarded as having such an impairment." *Id.* (citing 42 U.S.C. § 12102(1)). Here, Graziosi claims that he was subjected to harassing behavior and ultimately terminated because he has a "record of" a disability and/or was "regarded as" having a disability. The parties dispute whether Graziosi has adequately pled

8

that he is disabled within the meaning of the ADA and, if so, whether he has alleged a plausible basis for a claim.[4]

### 1. Record of a Disability

To state a "record of" claim under the ADA's second definition of disability, a plaintiff must allege that he had a "history of, or had been misclassified as having, an impairment that substantially limited a major life activity." *Eshelman v. Agere Sys., Inc.*, 554 F.3d 426, 437 (3d Cir. 2009) (quotations and alteration omitted); *see also Ruggiero v. Mount Nittany Med. Ctr.*, 736 F. App'x 35, 41 n.3 (3d Cir. 2018) ("'An individual has a record of a disability if the individual has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities.'" (quoting 29 C.F.R. § 1630.2(k)(1)). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). The 2008 ADA Amendments Act clarified that the definition of disability and "substantially limits" should be construed "in favor of broad coverage of individuals . . . to the maximum extent permitted." 42 U.S.C. § 12102(4)(A)-(B).

A careful review of the allegations in the Complaint supports that Graziosi has not plausibly stated that he had a "record of" a disability because he has alleged no facts from which one could infer that the mental health conditions he disclosed to Inspiritec substantially burdened a major life activity. Although a plaintiff need not "go into particulars about the life activity

---

[4] The Complaint's allegations about Graziosi's work history support an inference that he was otherwise qualified for his job with Inspiritec, (*see* Compl. at 5, ¶¶ 23-25), and his termination is a sufficient adverse action for purposes of an ADA claim. The parties do not appear to dispute these elements at this stage of the case. Rather, they dispute whether Graziosi has adequately pled a disability under the statute and whether he plausibly alleged a basis for inferring discrimination based on that disability.

affected by [his] alleged disability or detail the nature of [his] substantial limitations" at the pleading stage to state a plausible "record of" claim, he still must allege some facts to support an inference that he suffered from a disability within the meaning of the statute. *Fowler*, 578 F.3d at 213. Graziosi alleges that he suffers from certain mental health conditions, (Compl. ¶ 13), but nothing in the Complaint supports an inference that these impairments substantially limited any major life activity or that Inspiritec had or was aware of a record to that effect. To the contrary, when Graziosi communicated information about his mental health conditions to the Human Resources manager at Inspiritec, he informed her that he did not require any accommodations and, although he was twice provided with a form for listing his limitations, there is no allegation that he ever completed that form. (*Id.* ¶¶ 29-32, 72-73.) Indeed, the general basis for Graziosi's claims is not that he was in fact limited by his conditions, but that Inspiritec improperly believed he was so limited and terminated him on that basis. Accordingly, Graziosi has failed to state a plausible basis for proceeding on a "record of" claim under the ADA because he did not allege that his mental health conditions substantially limited a major life activity. *Compare Fowler*, 578 F.3d at 213 (plaintiff stated disability where her "alleged limitation to sedentary work plausibly suggests that she might be substantially limited in the major life activity of working") *with Equal Emp. Opportunity Comm'n v. Geisinger Health*, No. 21-4294, 2022 WL 10208553, at *12 (E.D. Pa. Oct. 17, 2022) ("[T]he EEOC admits that Casterline was released to return to work without any limitations, so unlike the Third Circuit in *Fowler*, we cannot infer that she was substantially limited in the major life activity of work."); *Karipidis v. ACE Gaming LLC*, No. 09-3321, 2010 WL 2521209, at *8 (D.N.J. June 9, 2010) ("By simply stating that the plaintiff lives with an injury, illness or impairment without alleging that the impairment substantially limits a major life activity creates a defect in the Complaint.").

### 2. Regarded as Disabled

"A plaintiff states a 'regarded as' claim if s/he 'establishes that he or she has been subjected to an action prohibited under [the ADA] because of an actual or perceived physical or mental impairment *whether or not the impairment limits or is perceived to limit a major life activity*.'" *Eshelman*, 961 F.3d at 245 (quoting 42 U.S.C. § 12102(3)) (alterations in original and emphasis added); *see also Gibbs v. City of Pittsburgh*, 989 F.3d 226, 229 (3d Cir. 2021) ("The test [for a "regarded as" claim] is whether the employer perceived [the employee] as impaired, whether or not the perceived impairment limits or is perceived to limit a major life activity." (quotations and alteration omitted)). "An employer regards a person as disabled when it misinterprets information about an employee's limitations to conclude that the employee is incapable of performing his or her job requirements." *Eshelman*, 961 F.3d at 245 (quotations and alteration omitted).

Graziosi has plausibly stated a "regarded as" claim under the ADA based on his termination. Contrary to Inspiritec's assertion, it is not necessary to allege a *prima facie* case to state an employment discrimination claim at the pleading stage of a case. *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) (explaining that "[t]o defeat a motion to dismiss, it is sufficient to allege a prima facie case . . . [b]ut it is not necessary."); *Fowler*, 578 F.3d at 213 ("A determination whether a *prima facie* case has been made, however, is an evidentiary inquiry [rather than a pleading standard] — it defines the quantum of proof plaintiff must present to create a rebuttable presumption of discrimination."). Rather, as explained, a "complaint need only allege enough facts to 'raise a reasonable expectation that discovery will reveal evidence of [each] necessary element.'" *Martinez*, 986 F.3d at 266 (quoting *Fowler*, 578 F.3d at 113).

Here, Graziosi alleges that prior to his start date, he had a conversation about his mental health conditions — Bipolar Disorder, Generalized Anxiety Disorder, and Obsessive Compulsive

11

Disorder — with Inspiritec's Human Resources manager, that he provided her with documentation of those disabilities, and that the two discussed those disabilities, including how to proceed should Graziosi ultimately require an accommodation, which he claimed he did not. (Compl. at ¶¶ 13, 26-33.) Graziosi contends that during the training period, he was not given technical support provided to other (apparently non-disabled) employees and that, on the day he was terminated, he had conversations with his case manager and supervisor in which they asked him to complete a medical form describing his impairments and any related limitations, told him that he was not a good fit for his job due to his "limitations" (of which Graziosi alleges he had none relevant to the job), and informed him that he could reapply for a job with Inspiritec in a department that solely hires disabled employees "because that department would be better for someone like you." (Compl. ¶¶ 42-47, 69-96 (emphasis omitted).) These allegations support an inference that Graziosi was terminated because of Inspiritec's perception that his mental health conditions limited his ability to perform in the job for which he was hired, *i.e.*, that they regarded him as disabled, terminated him on that basis, and were only willing to employ him in a department specifically designated for employees with disabilities. In other words, Graziosi has pled a plausible basis for proceeding on his "regarded as" claim under the ADA. *See Gibbs*, 989 F.3d at 229 ("Although Gibbs's ADHD was under control, the psychologists allegedly thought it was a handicap and fixated on it in rejecting him. So he has plausibly alleged that they regarded him as disabled."); *Bardell v. Banyan Delaware, LLC*, No. 23-148, 2023 WL 6810092, at *4 (D. Del. Oct. 16, 2023) (concluding that plaintiff, who suffered from addiction, adequately stated a "regarded as" claim when he was terminated following discussions about rumors circulating at the company that he had relapsed).

### B. ADA Retaliation claim

The ADA's antiretaliation provision states that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ADA]." 42 U.S.C.A. § 12203(a). To state a retaliation claim under the ADA, a plaintiff must plead sufficient factual allegations to raise a reasonable expectation discovery will reveal:  (1) that he engaged in a protected employment activity under the ADA; (2) that the employer took an adverse employment action against him; and (3) a causal link between the protected activity and the adverse employment action. *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997); *see also Connelly*, 809 F.3d at 789. "Protected activities under the ADA generally include: '(1) opposition to a practice made unlawful under the ADA; and (2) participation in an ADA investigation, proceeding, or hearing by making a charge, testifying, or otherwise assisting in the investigation.'" *Leffert v. Walmart Inc.*, No. 23-2815, 2023 WL 8810790, at *3 (E.D. Pa. Dec. 20, 2023) (quoting *Kaniuka v. Good Shepherd Home*, No. 05-2917, 2006 WL 2380387, at *9 (E.D. Pa. Aug. 15, 2006)). In contrast, "[a] general complaint of unfair treatment is insufficient to establish protected activity." *Curay-Cramer v. Ursuline Acad. of Wilmington, Delaware, Inc.*, 450 F.3d 130, 135 (3d Cir. 2006). "Because the anti-retaliation provisions of the ADA and ADEA are nearly identical, as is the anti-retaliation provision of Title VII, . . . precedent interpreting any one of these statutes is equally relevant to interpretation of the others." *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567 (3d Cir. 2002).

Graziosi's retaliation claim fails because he has not alleged that he participated in a protected employment activity. The basis for Graziosi's retaliation claim appears to be his allegation that on February 21, 2023, he complained to Mosby, his case manager, about "an unfair

13

review" he received from a trainer who held four classes during which Graziosi was the only trainee limited to participating by audio because he was unable to access the video technology required to attend the meeting. (Compl. ¶ 1.) Graziosi alleges that Mosby blamed him for the poor review without permitting him to provide an explanation and that, thereafter, he experienced "harassing" conduct leading up to his termination.[5] (*Id.* ¶¶ 1, 3-5, 34-41, 50-54.) There are no allegations, however, that Graziosi's complaint to Mosby included a concern that he was being treated differently or discriminated against because of an impairment, record of an impairment, or because he was regarded as having an impairment. In other words, Graziosi alleges only that he complained of an "unfair" poor performance review, but he does not allege that his complaint of unfairness was at all predicated on concerns about disability discrimination. Accordingly, this allegation reflects nothing more than a generalized complaint of workplace unfairness insufficient to support a plausible inference that Graziosi opposed conduct that violates the ADA. *See Curay-Cramer*, 450 F.3d at 135 ("[O]pposition to an illegal employment practice must identify the employer and the practice—if not specifically, at least by context"); *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 188 (3d Cir. 2003) ("[I]t is unlawful for an employer to retaliate against an employee based upon the employee's opposition to anything *that is unlawful under the ADA*." (emphasis added)); *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 701 (3d Cir. 1995) (plaintiff did not engage in protected activity where his "letter to Human Resources complains about unfair treatment in general and expresses his dissatisfaction with the fact that someone else was awarded the position, but it does not specifically complain about age discrimination").

---

[5] Graziosi alleges that following his meeting with Mosby, Tech Manager Johnson "harassed" him by speaking to him disrespectfully and unprofessionally, but that he never brought his concerns to Johnson or reported her conduct. (Compl. ¶¶ 34-38.) Accordingly, Inspiritec is correct that Graziosi never "opposed" this conduct in a manner that would equate to a protected activity for purposes of a retaliation claim.

14

Notably, Graziosi does not allege in his response that this or any other discussion or action constituted a protected activity. Rather, he reasserts the factual basis for his claim that he was discriminated against because he was regarded as disabled. (Pl.'s Resp. at 13-16.) While those facts suffice to state a "regarded as" claim, they do not state a separate plausible claim for retaliation.

C. NJLAD

At issue with Graziosi's NJLAD claims, which are predicated on the same conduct as his ADA claims, is whether the NJLAD covers Graziosi, who worked remotely full time from his home in New Jersey for a company based in Philadelphia, Pennsylvania. "New Jersey law does not regulate conduct outside the state." *D'Agostino v. Johnson & Johnson, Inc.*, 628 A.2d 305, 318 (N.J. 1993). Accordingly, "'New Jersey courts have consistently applied the law of the *state of employment* to claims of workplace discrimination, and therefore only apply the NJLAD if the claimant was employed in New Jersey.'" *Peikin v. Kimmel & Silverman, P.C.*, 576 F. Supp. 2d 654, 657 (D.N.J. 2008) (quoting *Weinberg v. Interep Corp.*, No. 05-5458, 2006 WL 1096908, at *6 (D.N.J. Apr. 26, 2006)); *Buccilli v. Timby, Brown & Timby*, 660 A.2d 1261, 1263 (N.J. Super. Ct. App. Div. 1995) ("[T]he damage claim of a New Jersey resident for her allegedly wrongful dismissal from out-of-state employment is governed by the law of the state in which she was employed."). The advent of remote work, however, raises the question of what state law governs an employee's employment discrimination claims when an employee is based in a different state than his employer.

Inspiritec relies heavily on *Kunkle v. Republic Bank*, No. 21-20245, 2023 WL 4348688 (D.N.J. July 5, 2023) for its argument that the NJLAD does not apply to Graziosi. (Def.'s Rep. at 3-4.) In *Kunkle*, the plaintiff, a citizen and resident of New Jersey, was employed with the

15

defendant, a Pennsylvania financial institution with a principal place of business in Pennsylvania, for sixteen years until her termination in June 2021. *Id.* at *1-*3. Throughout her employment, "Plaintiff worked out of the bank's headquarters at Two Liberty Place in Philadelphia, Pennsylvania, except when she was working remotely from her home in New Jersey on Fridays in 2017 and during the pandemic in 2020-21." *Id.* at *1. Addressing the matter on summary judgment, the court concluded that the NJLAD did not apply because the record did not establish that plaintiff was employed in New Jersey. *Id.* at *7. Relevant to the decision was the fact that plaintiff's position was based in Pennsylvania, where plaintiff began her employment and primarily worked, and that the allegedly discriminatory behavior took place in Pennsylvania. *Id.* at *6. ("The New Jersey Supreme Court has explained that a proper consideration to determine the applicability of the NJLAD is whether the alleged discriminatory behavior was expected or intended to cause injury in New Jersey." (internal quotations omitted)). That plaintiff spent a period of time working remotely from her home in New Jersey did not alter the court's calculus:

> [T]he mere fact that [plaintiff] pursued and was granted the ability to spend what amounts to a proportionately minimal portion of her time working from her home in New Jersey, does not entitle her to the protections of the NJLAD. . . . Plaintiff accepted and commenced employment at Defendant Bank's Philadelphia headquarters in 2005. When she was promoted in 2007, the promotion was offered and accepted through that same Philadelphia office. For the entirety of Plaintiff's employment — more than sixteen (16) years — Plaintiff only worked with and reported to individuals in the Philadelphia office. At no time did she ever accept employment in the bank's New Jersey office, nor did she ever work with or for anyone from the bank in New Jersey. Up until the last three months of Plaintiff's employment when Plaintiff claimed Defendant Pounds improperly denied her request to work remotely on the basis of gender, all of the alleged incidents of misconduct by Defendant Pounds occurred in the Philadelphia office. *Id.* at *7 (footnote omitted).

Graziosi's case is distinguishable from *Kunkle*. Contrary to the plaintiff there, Graziosi never worked in Pennsylvania. Rather, he worked exclusively from his home in New Jersey. The impact of the allegedly discriminatory conduct was therefore directed at and caused injury in New

16

Jersey. Inspiritec argues that Graziosi was "based out of" its Philadelphia office and notes that it is a Pennsylvania corporation with a registered office in Philadelphia. (Def.'s Resp. at 10.) Even considering these facts, which are not alleged in the Complaint, it is not clear to the Court at this early stage of the litigation, considering the relative novelty of remote work, that the NJLAD cannot apply to an employee who works exclusively from his home in New Jersey for an employer located elsewhere. For example, it is unspecified in the Complaint whether Graziosi was required by Inspiritec to work from his home or was merely permitted to do so and whether he reported to individuals who were also located in New Jersey. Accordingly, the Court concludes that Graziosi has alleged enough at the pleading stage to raise an inference that the NJLAD applies to his employment.[6] However, Inspiritec may reassert this issue upon summary judgment following further development of the factual record.

Substantively, Graziosi's NJLAD claims are construed coextensively with his ADA claims. *See Fowler v. AT&T, Inc.*, 19 F.4th 292, 298 (3d Cir. 2021) ("New Jersey law generally tracks the relevant federal statutes."); *Cottrell v. Zagami, LLC*, 537 F. App'x 46, 48 n.1 (3d Cir.

---

[6] In recent years, courts have permitted the application of NJLAD to claims brought by non-New Jersey plaintiffs if New Jersey has significant connections to the claims. *See Schulman v. Zoetis, Inc.*, No. 22-1351, 2023 WL 4539476, at *2 (D.N.J. July 14, 2023) (denying motion to dismiss NJLAD claim brought by "a non-New Jersey resident working outside of New Jersey for a New Jersey-connected employer" (relying on *Calabotta v. Phibro Animal Health Corp.*, 213 A.3d 210 (N.J. Super. Ct. App. Div. 2019)). To proceed past the pleading stage in such a context, "an out-of-state plaintiff must plausibly allege, prior to discovery, some facts to show that he or she is entitled, as a threshold matter, to the protection of the NJLAD." *Donovan v. W. R. Berkley Corp.*, 566 F. Supp. 3d 224, 233 (D.N.J. 2021). "In other words, to survive a motion to dismiss under Rule 12(b)(6), an out-of-state plaintiff must allege that New Jersey has the most significant relationship to his claim." *Id.* Although Graziosi's case concerns a New Jersey resident working for a non-New Jersey company from his home in New Jersey, rather than a non-New Jersey plaintiff working for a New Jersey-connected employer, both situations arguably implicate the interests of New Jersey. As the *Calabotta* Court recognized, the NJLAD protects "all persons" and "[t]he statute's plain language . . . does not limit the definition of 'person' to New Jersey residents or employees." 213 A.3d at 222. The Court noted too that other relevant statutory terms, like "employer" and "any individual," also do not purport to limit the statute's coverage to those who work or live in New Jersey. *See id.* at 223. Accordingly, at this stage of the case, Graziosi's allegation that he was physically present in New Jersey for the entirety of his employment with Inspiritec is sufficient to permit the claim to proceed to discovery.

2013) (*per curiam*) ("[B]ecause the same showings are required to establish a retaliation claim under both the NJLAD and the ADA, *see Tartaglia v. UBS PaineWebber, Inc.,* 961 A.2d 1167, 1192 (N.J. 2008), our discussion applies equally to both of these claims."); *Ogunbayo v. Hertz Corp.*, 542 F. App'x 105, 107 (3d Cir. 2013) (*per curiam*) ("[O]nly challenges to discrimination prohibited by the NJLAD . . . constitute 'protected activity.'"); *Lawrence v. Nat'l Westminster Bank New Jersey*, 98 F.3d 61, 70 (3d Cir. 1996) ("[T]he ADA and LAD claims are governed by the same standards"). Accordingly, for the reasons discussed above applicable to his ADA claims, Graziosi will be permitted to proceed on his NJLAD claim for disability discrimination on the basis that Inspiritec regarded him as disabled, but his remaining NJLAD claims, including his retaliation claim, will be dismissed.

## V.   CONCLUSION

For the foregoing reasons, Inspiritec's Motion is granted, in part, and denied, in part. The Motion is denied as to Graziosi's "regarded as" claims for disability discrimination under the ADA and the NJLAD. Graziosi's remaining claims are dismissed. It is unclear whether Graziosi can cure the defects in the dismissed claims, however, the Court will give him a brief opportunity to file an amended complaint prior to moving forward with discovery. An order follows, which provides further instructions for proceeding.

*NITZA I. QUIÑONES ALEJANDRO, J*